IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Herbert William Jones Jr.,                 )<br>    Plaintiff,                                       )<br>                                                          )<br>v.                                                       )<br>                                                          )<br>Ronald Hite, et al.,                            )<br>    Defendants.                                 ) | 1:22cv1284 (CMH/IDD) |

MEMORANDUM OPINION

This is a civil rights action filed under 42 U.S.C. § 1983 by Virginia state prisoner Herbert Jones ("plaintiff"), who seeks relief on the alleged basis that defendants Ronald Hite and Jimmy Pride violated his rights under federal and state law with relation to plaintiff's July 2020 arrest for "peeping" into a private home. [Dkt. Nos. 1, 6-1]. Defendants have each filed Motions to Dismiss, see [Dkt. Nos. 24, 32, 42], in response to which this matter is now before the Court. Plaintiff has opposed the pending Motions to Dismiss, see [Dkt. Nos. 31, 36, 37, 44], and the Court therefore deems the motions ready for consideration. For the reasons explained below, the Motions to Dismiss will be granted, and this action will be dismissed with prejudice.

I. Background

The Complaint alleges that, on June 28, 2020, Glenda Ford called the police, reporting that her daughter had heard a noise on their front porch and that, when she opened the door, an individual fled from the porch in the direction of Tyler Street in Crewe, Virginia. [Dkt. No. 1] at 4-5. Defendant Hite received Ford's call, promptly reported to the Ford residence, and took Ms. Ford's statement. Id. After doing so, Hite produced a photograph of plaintiff and asked Ms. Ford whether plaintiff had been the individual on her property. Id. Ford responded that she had

been unable to see the subject and therefore could not confirm that plaintiff had been responsible. Id.

Defendant Hite then left the Ford residence and proceeded to plaintiff's mother's home. Id. at 5. There, he asked whether plaintiff had been on the Fords' porch in the preceding two hours. Id. Plaintiff denied having been at the Fords' and went back into his home. Id.

Several months before these events, as a term of his supervised probation, plaintiff had been ordered by the Nottoway County General District Court to wear "a GPS ankle device to monitor his movement." [Dkt. No. 1] at 12. On July 1, 2020, defendant Pride, who was assigned as plaintiff's probation officer, "called [defendant] Hite … and falsely stated plaintiff['s] face was seen during the incident [on June 28]." Id. Pride had allegedly received this information from his supervisor after she received "a call from an unidentified Department of Corrections employee, who alleged that plaintiff [had] been peeping into his house at night looking at his daughter." Id.

On or about July 2, 2020, defendant Hite filed a police report summarizing his investigation. He wrote that he had first been summoned to 120 Gatewood Ave. "for a peeping tom"[1] and that, upon his arrival, he learned that the caller had "heard someone on the porch" and that the person "left running toward Tyler [Street]." [Dkt. No. 9-1] at 2. The report also states that defendant Hite had spoken with a witness who had seen an individual "going through people's yards" and that two witnesses had seen an individual enter a truck known to belong to plaintiff. Id. at 3. The report additionally notes that defendant Pride called defendant Hite on

---

[1] Plaintiff alleges that Hite "falsely stated he [defendant] was called to 120 Gatewood Ave. on June 28, 2020 for a "PEEPING TOM." [Dkt. No. 1] at 6. It appears from context that plaintiff used the word "falsely" to deny to the Court that he had looked—or "peeped"—into the Fords' home on the day in question, not because he believes that Hite lied in his report about having been summoned for that reason.

2

July 6, 2020 to inform Hite that plaintiff's ankle monitor placed plaintiff "around 120 Gatewood Ave. on the evening of 6/28/20 from 9:54 PM until 10:15 PM. 10:15 PM was the time that the call came in from 120 Gatewood Ave. for a peeping tom." [Dkt. No. 25-3] at 3.

Having compiled the evidence just described, defendant Hite obtained warrants for plaintiff's arrest from a magistrate on July 7, 2020. [Dkt. No. 1] at 6; [Dkt. No. 25-3] at 3. Plaintiff claims that defendant Hite knowingly provided the magistrate false information to obtain the warrants that issued. [Dkt. No. 1] at 6-7. Even so, two warrants did issue, charging that plaintiff twice—on June 14, 2020 and June 28, 2020—"unlawfully and feloniously … enter[ed] upon the property of another and secretly peep[ed] or sp[ied] into a window." [Dkt. No. 1] at 6.

On July 9, 2020, plaintiff was arrested pursuant to the warrants defendant Hite had obtained. Id. at 8. The following day, having concluded that plaintiff had violated the terms of his probation, defendant Pride "issued a PB-15 for plaintiff['s] arrest" after he and defendant Hite "agreed [] that allowing plaintiff to remain in the community after the incidents at 120 Gatewood Avenue [] would be a public safety concern." Id. at 13.

Plaintiff was later tried by a judge, who concluded that plaintiff had violated his the terms of his probation and allowed the Commonweath to nolle pross its peeping charge. See [Dkt. No. 43-1]; [Dkt. No. 44-3] at 8-9. Plaintiff's probation was accordingly revoked. [Dkt. No. 43-1].

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider the sufficiency of a complaint, not to resolve contests surrounding facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted

3

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To do so, the complaint must allege specific facts in support of each element of each claim it raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Id.

Although a court considering a Rule 12(b)(6) motion is tasked with determining the adequacy of a complaint itself, the reviewing court "may [also] consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed." Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 464 (E.D. Va. 2013); see also Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006).

### III. Analysis

The Complaint raises several claims—some overlapping—against defendants Hite and Pride. The defendants' Motions to Dismiss will be addressed in turn.

**A.   Defendant Hite's Motion to Dismiss and Supplemental Motion to Dismiss**

In sum, plaintiff claims that defendant Hite should be held liable for malicious prosecution, false imprisonment, defamation, and slander per se. See [Dkt. Nos. 1, 6-1].

*1.   Malicious Prosecution*

**a.   Failure to State a Claim**

A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000). To state such a claim, a complaint must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal

process unsupported by probable cause and that (3) criminal proceedings terminated in plaintiff's favor. See Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012).

The Court concludes that the first element of this test is the only element plaintiff can satisfy. As it relates to causation, the Complaint is satisfactory in that it alleges that defendant Hite secured arrest warrants from a magistrate and that those arrest warrants led to plaintiff's arrest.

As to the second element—which asks whether the plaintiff's seizure was supported by probable cause—the Complaint contains little by way of specific factual allegations. In relevant part, it begins by alleging that defendant Hite obtained warrants for plaintiff's arrest "by providing false and misleading sworn affidavits to Nottoway County Magistrate, Mr. Richard W. Stevenson, upon which two [ ] warrants were issued charging that plaintiff did ... unlawfully and feloniously ... enter upon the property of another and secretly peep or spy into a window." [Dkt. No. 1] at 6. Plaintiff concludes, without any specific factual support, that defendant Hite "knew both statements were false when he swore them to the magistrate." Id.

Although alleged falsehoods offered to obtain an arrest warrant can support a finding that a plaintiff's seizure was not supported by probable cause, see, e.g., Bonnell v. Beach, 408 F. Supp. 3d 733, 749 (E.D. Va. 2019), the Court cannot merely accept as true plaintiff's conclusory allegations that Hite was dishonest. Cf. Horn v. Manger, No. CV PX-17-3633, 2023 WL 375180, at *3 (D. Md. Jan. 23, 2023) ("The Second Amended Complaint supplies no facts showing the arrests lacked probable cause. Instead, the Second Amended Complaint merely avers, in conclusory fashion, that Defendants obtained arrest warrants based on "false" information, but provides no detail as to what in the warrant had been false. Without more, the naked assertion that Plaintiffs' arrest had been based on false accusations must fail."); Davis v.

State Farm Fire & Cas. Co., No. 1:21-CV-2988-MLB, 2021 WL 6092466, at *4 (N.D. Ga. Dec. 23, 2021) ("Plaintiffs' conclusory allegations are insufficient to demonstrate an unconstitutional warrant.").

The Complaint also fails to satisfy the third element of a malicious prosecution claim. Indeed, documents related to the Complaint demonstrate that the legal proceedings initiated against plaintiff did not terminate in his favor because, although the "peeping" charges against plaintiff were ultimately nolle prossed,[2] see [Dkt. No. 44-3] at 8-9, plaintiff was found to have violated the terms of his probation, and his probation was therefore revoked, see [Dkt. No. 43-1].

### b. Qualified Immunity

Defendant Hite additionally asserts that he is protected by qualified immunity. The Court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, in the context of a malicious prosecution or false arrest claim, where an official reasonably believes he was supported by probable cause, he is entitled to qualified immunity. See Taylor v. Waters, 81 F.3d 429, 434-35 (4th Cir. 1996) (finding that qualified immunity applied because "an officer in Investigator Waters' position could reasonably have believed that the facts known to him were sufficient to establish probable cause for Taylor's arrest"). Probable cause is "defined in terms of facts and circumstances sufficient to warrant a

---

[2] Plaintiff mischaracterizes his "peeping" charges as having been dismissed "for lack of probable cause," see [Dkt. No. 44] at 3, when in reality, the prosecutor moved for dismissal of those charges on the ground that there was not "enough evidence at this stage of the proceeding to allow this charge to continue." See [Dkt. No. 44-3] at 8.

prudent man in believing that the suspect had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (internal quotation marks omitted).

Defined as such, there is no question that probable cause existed at the time defendant Hite sought plaintiff's arrest warrants. According to the Complaint and the documents to which it refers, by that time, Hite had (1) received a report of a "PEEPING TOM" at 120 Gatewood Ave, (2) heard from the homeowner that someone had been on their porch and had fled from the scene when she opened the door, (3) been told by two witnesses that an individual fleeing from the direction of Gatewood Ave had entered a truck thought to be owned by plaintiff, and (4) that plaintiff's GPS ankle monitor placed him at 120 Gatewood Ave directly before Hite received the call to report there.

Even if the Court were to accept as true plaintiff's conclusory allegations that Hite lied to the magistrate—a step it need not take nor easily *can* take given the lack of clarity as to the specific nature of Hite's alleged lies—it is clear that probable cause existed to arrest plaintiff even without consideration of any allegedly untruthful statements. Accord Hupp v. Cook, 931 F.3d 307, 324 (4th Cir. 2019) (denying qualified immunity where disputes of fact existed regarding a trooper's truthfulness in a criminal complaint and the remaining undisputed evidence would not "otherwise [ ] support a probable-cause finding").

***

For these reasons, the Court will grant defendant Hite's Motion to Dismiss with respect to the malicious prosecution claim raised against him.

2. *False Imprisonment*

Defendant Hite next asserts that plaintiff's false imprisonment claim is untimely. For the reasons explained below, the Court agrees.

A § 1983 claim based on events that occurred in Virginia is subject to Virginia's statute of limitations for general personal injury claims, see Owens v. Okure, 488 U.S. 235, 239-40 (1989), which requires an action to be brought within two years of its accrual, Va. Code § 8.01-243(A). The statute of limitations for an arrestee's § 1983 false arrest or false imprisonment claim begins to run at the time of arrest. Wallace v. Kato, 549 U.S. 384, 389 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.").

Here, although plaintiff takes issue with the validity of his arrest warrants, the Complaint concedes that the warrants issued on July 7, 2020. See [Dkt. No. 1] at 6. Plaintiff was arrested two days later—on July 9, 2020, see id. at 7—and his claim for false imprisonment thus began to accrue on that date. Cf. Tanner v. Nordstrom Corp. Office, No. 2:08cv241, 2008 WL 6964302, at *2 (E.D. Va. June 16, 2008) ("The arrest warrant for plaintiff was issued on December 24, 2005. Thus, plaintiff's [false imprisonment] claim accrued at that time."). Consequently, to be timely, plaintiff's claim would ordinarily have to have been filed by July 9, 2022; however, due to the Supreme Court of Virginia's emergency orders tolling statutes of limitations between March 16, 2020 and July 19, 2020, plaintiff gained an additional ten days in which to file his claim. See English v. Quinn, 76 Va. App. 80 (2022). Even taking this into account, plaintiff's complaint is untimely because it was filed on November 2, 2022, at the earliest, see [Dkt. No. 1] at 15, which is approximately three months after the statute of limitations took effect. Consequently, the Court will grant defendant Hite's Motion to Dismiss as to the false imprisonment claim raised against him.

### 3. *Defamation and Slander Per Se*

Plaintiff's defamation and slander per se claims are also untimely. Both defamation and slander are state law torts, and each has a one-year statute of limitations. See Va. Code § 8.01-247.1. The factual basis of the defamation claim is defendant Hite's use of the words "PEEPING TOM" in the police report he issued on July 2, 2020. See [Dkt. No. 1] at 10. The slander claim is apparently based on testimony defendant Hite offered to a Nottoway County grand jury on November 6, 2020. See [Dkt. No. 6-1] at 3.

Consistent with the above, and taking into account the Supreme Court of Virginia's emergency orders, plaintiff's defamation claim was tolled between its accrual and July 20, 2020, and therefore had to be filed by Monday, August 9, 2021 to be timely. Because plaintiff's slander claim arose outside of the state supreme court's tolling order window, it had to be filed within a year of its accrual—or by November 6, 2021—to be timely. Because plaintiff filed this suit on November 2, 2022 at the earliest, neither claim is timely.

### B. Defendant Pride's Motion to Dismiss

Plaintiff appears to seek relief from defendant Pride only for malicious prosecution and for defamation per se. See [Dkt. No. 1] at 12-13; [Dkt. No. 6-1] at 2. Each claim is deficient.

### 1. *Malicious Prosecution*

As discussed above, to state a malicious prosecution claim, a complaint must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause and that (3) criminal proceedings terminated in plaintiff's favor. See Durham, 690 F.3d at 188. Without conceding that the Complaint satisfies these elements, Pride argues

that, as a probation officer acting in a prosecutorial capacity, he is immune from suit. See [Dkt. No. 43]. The Court agrees.

As a general matter, probation officers are entitled to immunity in the performance of their duties, but the type of immunity afforded depends on whether "the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity." King v. Simpson, 189 F.3d 284, 288 (2d Cir. 1999) (internal quotation marks omitted). Consistent with this reasoning, probation officers are entitled to absolute immunity from suit in connection with their "preparing and furnishing presentence reports to the court." Dorman v. Higgins, 821 F.2d 133, 137 (2d Cir. 1987); accord Peay v. Ajello, 470 F.3d 65, 69 (2d Cir. 2006) (concluding that Connecticut probation officers are "entitled to absolute immunity in suits for damages arising out of their preparation and submission of presentence reports"). They are also entitled to absolute immunity in "initiating parole revocation proceedings and in presenting the case for revocation to hearing officers." Scotto v. Almenas, 143 F.3d 105, 112 (2d Cir. 1998). By contrast, in performing investigatory duties—for example, by filing a violation report or recommending the issuance of an arrest warrant—a parole officer is entitled only to *qualified* immunity. See Scotto, 143 F.3d at 111; see also Roberts ex rel. Estate of Roberts v. Lapp, 297 F. App'x 67, 69 (2d Cir. 2008) (holding state parole officer entitled to qualified immunity in recommending that parole warrant issue); Malik v. Mackey, 268 F. App'x 83, 84 (2d Cir. 2008) (holding state parole officer entitled to qualified immunity in filing parole violation charges).

Here, the Complaint alleges that defendant Pride spoke with defendant Hite regarding a phone call received by another probation officer, issued a "PB-15" violation report, and played at least some role in the proceedings through which plaintiff's probation was ultimately revoked.

10

See [Dkt. No. 1] at 12 (conceding that defendant Pride "subsequently ratified and continued the prosecution initiated by Officer Hite"). This final allegation is particularly important because Pride's involvement beyond the mere issuance of a violation report and into the prosecutorial process militates a finding that he is entitled to absolute immunity. Cf. Culpepper v. Wilson, No. CIVA 9:09-2328-TLWBM, 2010 WL 1541764, at *4 (D.S.C. Feb. 24, 2010) (D.S.C. Apr. 16, 2010) (finding that a probation officer's recommendation that "[p]laintiff's CSP be revoked, as well as his participation in Plaintiff's court hearings, do not give rise to a constitutional claim, as [the probation officer] enjoys [absolute] immunity from suit for these actions").

Even to the extent Pride is not protected by absolute immunity, he is protected by qualified immunity. As stated above, in the context of a malicious prosecution claim, where an official reasonably believes he was supported by probable cause, he is entitled to qualified immunity. See Taylor, 81 F.3d at 434. The Complaint's allegations, when compiled, demonstrate that probable cause existed to believe that plaintiff had violated the terms of his probation, or even committed a peeping offense.

To the extent plaintiff's malicious prosecution claim is predicated solely on defendant Pride's phone calls to defendant Hite—which plaintiff argues "set on foot" his criminal prosecution, see [Dkt. No. 44] at 3—two pieces of evidence are relevant. First, the pleading alleges that another official in Pride's office had received a phone call from a corrections official, who claimed that plaintiff had been "peeping into his house at night looking at his daughter." [Dkt. No. 1] at 12. Next, the police report plaintiff himself submitted establishes that GPS data placed plaintiff at 120 Gatewood Ave on June 28, 2020, from 9:54 pm to 10:15 pm, when the alleged peeping had occurred. [Dkt. No. 9-1] at 3. Pride allegedly provided Hite these two

pieces of information, and the Court concludes that they establish probable cause to shield Pride from liability.

To the extent plaintiff's claim is based on the issuance of the violation report—which Pride authored several days after his phone calls with defendant Hite—defendant Pride had yet more evidence to support his position, including evidence that the occupants of 120 Gatewood Ave had heard a sound on their porch and saw someone fleeing, only for that person to later be identified as plaintiff. See [Dkt. No. 9-1]. Without question, the cumulative evidence is damning and more than sufficient to satisfy the probable cause standard. Consequently, the Court concludes that defendant Pride is entitled—if not to absolute immunity—to qualified immunity for his actions with respect to plaintiff's claim of malicious prosecution.

2. **_Defamation Per Se_**

As was true of his defamation and slander claims against defendant Hite, plaintiff's defamation claim against defendant Pride is untimely. The factual basis of this claim is that, on or about July 1, 2020, " defendant Pride "called defendant Ronald Hite ... and falsely stated plaintiff's face was seen peeping into a window of a dwelling located at 120 Gatewood Avenue in Crewe." [Dkt. No. 6-1] at 2. Because this lawsuit was not filed under November 2, 2022 at the earliest, it is clear that plaintiff's claim is untimely by more than a full year. Pride's Motion to Dismiss will therefore be granted as to this claim.

### IV. Conclusion

For the reasons stated above, defendants' Motions to Dismiss will be granted by an order that will accompany this Memorandum Opinion.

Entered this 27th day of Mar. 2024.

Alexandria, Virginia

_____
United States District Judge